

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

EAG/AL
F.#2010R00153

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 20, 2012

By Hand Delivery and ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. John Rossano
     Criminal Docket No. 11-30 (KAM)

Dear Judge Matsumoto:

   The government respectfully submits this letter in response to the sentencing memorandum submitted by the defendant John Rossano (Sent. Mem., filed Jan. 11, 2012, ECF Docket Entry No. 646 ("Def't Sent. Mem.")), and to the letter setting forth the defendant's objections to the Pre-Sentence Investigation Report ("PSR"). (Ltr. of Joseph Lobosco, Esq. and Gina Tennen, Esq., dated Jan. 3, 2012 ("Def't PSR Obj.")). For the reasons set forth below, the government opposes the defendant's request for a non-incarceratory sentence, and respectfully asks the Court to sentence the defendant within the advisory Guidelines range of 21 to 37 months' incarceration.

I. Background

   The defendant John Rossano is a long-time associate of the Colombo organized crime family of La Cosa Nostra (the "Colombo family" and "LCN," respectively). Rossano participated in two schemes to defraud with his co-defendant Michael Castellano, another co-conspirator (hereinafter, "CC") and others. The co-conspirators in the first scheme, which took place in the 1990s, included, among others, co-defendants Michael Castellano, Frank Senatore and Anthony Calabro, and CC, who at the time had a reputation as a respected associate in the Colombo family. In that scheme, the co-conspirators placed advertisements in newspapers, falsely promising to loan money to individuals with poor credit histories in exchange for an up-front payment, and then faxed confirmation letters to the

individuals who responded to the advertisements. The co-conspirators then arranged for the customers to transmit by Western Union the up-front payments, which the coconspiractors then collected. The co-conspirators never provided the customers with the money they promised to loan them. Rossano assisted in the scheme by collecting the money from Western Union outlets using fraudulent identification documents. Castellano and co-defendant Frank Senatore were charged in 2001 and subsequently convicted of their participation in the scheme (and the conduct is alleged against Castellano, Senatore and Calabro as Racketeering Act Three of Count One in the current indictment). Rossano was never prosecuted for his participation in this scheme.

The second scheme was the charged scheme to defraud MoneyGram and involved, among others, Castellano, Rossano and CC, who by that time had been inducted into the Colombo family and held the position of captain. In furtherance of that scheme, Castellano acquired the requisite information to impersonate an employee at a MoneyGram outlet by entering a MoneyGram outlet and using social engineering to obtain the particular outlet's identification number, which allowed employees at the MoneyGram outlet to identify themselves to a centralized MoneyGram location. Castellano then called the centralized MoneyGram location using a prepaid cellular telephone, impersonated an employee at the particular MoneyGram outlet for which he had just obtained the pin number, and placed an order for the transfer of MoneyGram funds to various MoneyGram outlets along the Eastern Seaboard. Rossano and CC would then assist Castellano by driving him to the MoneyGram outlet and picking up the ordered funds by presenting fraudulent identification documents. Rossano, Castellano and CC then split the proceeds equally. After CC was arrested in June 2008, Rossano and Castellano continued to engage in the scheme. Rossano was arrested on December 1, 2008 in Connecticut when he picked up a fraudulent MoneyGram order that the co-conspirators had placed as part of this scheme.

On January 12, 2011, a grand jury in the Eastern District of New York returned an indictment charging the defendant and thirty-eight others with a variety of offenses based on their leadership of, membership in and association with the Colombo family. (Docket Entry No. 1.) The defendant was charged in Counts Ten through Fourteen of the indictment with conspiring to defraud, and defrauding, MoneyGram, in violation of 18 U.S.C. §§ 1343 and 1349. (Id. ¶¶ 201-04.)

On January 20, 2011, the indictment was unsealed and the defendant was arrested. (Docket Entries Nos. 2, [INSERT];

Presentence Investigation Report ("PSR") ¶ 11.)  On June 22, 2011, the defendant pled guilty, pursuant to a plea agreement, to Count Ten.  (Docket Entry No. 443; PSR ¶ 1.)

II. Discussion

The government respectfully submits that a sentence within the advisory Guidelines range determined by the Court is appropriate.

A. Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 543 U.S. 220, 258-60 (2005).  However, the Supreme Court held in Booker that sentencing courts must consider the Guidelines in formulating an appropriate sentence. Id.  In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [a district court] may not presume that the Guidelines range is reasonable.  [A district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

B. The Guidelines Range Is 21 to 27 Months

The Probation Department has determined that the adjusted offense level is 18, the defendant is in Criminal History Category I, and the advisory Guidelines range of imprisonment is 27 to 33 months.  (PSR ¶¶ 21-28, 31, 60).  The government agrees with this determination, except that the government is prepared to move for a two-level decrease in the applicable sentencing range.  As the Court is aware, a number of defendants in this case, including the present defendant, have pleaded guilty pursuant to plea agreements in which the government agreed to recommend an additional two-level reduction, pursuant to U.S.S.G. § 5K2.0, to the advisory Guidelines range if

-3-

all "covered defendants" listed in the plea agreements entered guilty pleas by a certain date and the pleas were accepted by a United States District Judge. Although not all of the "covered defendants" have pleaded guilty, the government moves for a two-level reduction in light of the guilty pleas entered by numerous covered defendants. If the Court grants the reduction, the adjusted offense level will be 16 and the advisory Guidelines range of imprisonment will be 21 to 27 months.

The defendant's argument that he should only be held accountable for the loss incurred in 2007 and 2008 in the states of New York, New Jersey and Connecticut, where there is incontrovertible proof that Rossano personally committed acts in furtherance of the fraud scheme, is without merit. Under Section 2B1.1 of the Guidelines, the defendant is accountable for "the greater of the actual loss or intended loss." U.S.S.G. § 2B1.1, App. Note 3(A). Under Section 1B1.3(a) of the Guidelines, the loss amount attributable to a defendant includes not only "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by defendant," U.S.S.G. § 1B1.3(a)(1)(A), but also, "in the case of jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity[.]" U.S.S.G. § 1B1.3(a)(1)(B).

The defendant does not appear to dispute that the "actual loss" sustained by MoneyGram as a result of the charged scheme to defraud was in excess of $1,500,000. Rather, he argues that he cannot be held responsible for the loss incurred (1) in states to which the government has not presented evidence that the defendant personally traveled in furtherance of the conspiracy, or (2) after he was arrested in 2008 and ceased active participation in the conspiracy. Neither argument has merit.

With respect to Rossano's first argument (see Def't PSR Obj. at 1-9; Sent. Mem. at 5), the defendant overlooks the Section 1B1.3(a) of the Guidelines, which attributes loss incurred as a result of acts that were committed by a defendant's co-conspirators so long as the acts were reasonably foreseeable to the defendant. It was certainly reasonably foreseeable to Rossano that co-defendant Michael Castellano, who was the ring-leader of the scheme to defraud MoneyGram, relied on individuals other than Rossano to pickup the MoneyGram funds. Rossano knew that others, namely, Castellano and CC, participated in the scheme and thus, that others aside from Rossano were available to pickup the MoneyGram funds ordered. Accordingly, it was certainly reasonably foreseeable to Rossano, who previously

participated in the scheme to defraud with Castellano, CC and others, that others would also be involved in this wide-ranging scheme that involved significant travel to other states to execute the scheme.

With respect to his second argument (see Def't Sent. Mem. at 12), it is well-established that "a defendant bears the burden of showing that he withdrew from a conspiracy and must take affirmative actions to do so." United States v. Williams, 605 F.3d 556, 569 (8th Cir. 2010) (citing United States v. Granados, 962 F.2d 767, 773 (8th Cir. 1992), and United States v. Zimmer, 299 F.3d 710, 718 (8th Cir. 2002)). "'Mere cessation of activities is not enough' to prove a defendant withdrew from a conspiracy." Williams, 605 F.3d at 569 (quoting Granados, 962 F.2d at 773 and citing United States v. Maggard, 156 F.3d 843, 851 (8th Cir. 1998)). See also United States v. Nieves, 322 F.3d 51, 55 (1st Cir. 2003) ("To withdraw from an ongoing conspiracy, [a defendant] must do more than merely cease selling drugs [the object of the applicable conspiracy]. In order to withdraw, a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy. Typically, there must be evidence of a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the enterprise and its goals." (internal citations and quotation marks omitted)); United States v. Schorovsky, 202 F.3d 727, 729 (5th Cir. 2000) ("A defendant is presumed to continue involvement in a conspiracy unless she makes a substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose. To establish withdrawal a defendant bears the burden of demonstrating affirmative acts inconsistent with the object of the conspiracy that are communicated in a manner reasonably calculated to reach conspirators." (internal citations and quotation marks omitted)).

In sum, there is more than a preponderance of evidence to show that the losses that were incurred outside of New York, New Jersey and Connecticut and the losses that were incurred after 2008 were, at a minimum, reasonably foreseeable to Rossano and therefore Rossano should be held accountable for the entire $1.5 million loss amount.

C. A Sentence Within the Guidelines Range Is Appropriate

Based on the factors set forth in 18 U.S.C. § 3553(a), a sentence within the Guidelines range determined by the Court is appropriate in this case.

1. <u>The Nature and Circumstances of the Offense</u>

The offense in which the defendant participated is a serious one. 18 U.S.C. § 3553(a)(1). The fraud conspiracy was sophisticated in that, <u>inter alia</u>, it spanned numerous states, lasted four years and resulted in a loss in excess of $1.5 million to MoneyGram. In addition, to perpetuate the scheme, the co-conspirators obtained fraudulent identification documents, which Rossano and others used to impersonate others when they picked up the funds from the MoneyGram outlets. Indeed upon Rossano's arrest in December 2008 in Connecticut – one of many occasions where Rossano picked up funds from a fraudulent MoneyGram order – identification documents in two separate names from two separate states were recovered from Rossano.

That the lucrative scheme to defraud was committed in connection with the Colombo family, a dangerous criminal enterprise that uses violence, including murder, to further its interests, further underscores the serious nature of the offense. As set forth above, the co-conspirators shared their earnings with CC, a high-ranking member of the Colombo family. Sharing proceeds of lucrative schemes and resources – such as access to fraudulent identification documents – with organized crime families greatly contributes to the families' viability as dangerous criminal organizations.

In light of the foregoing, the government respectfully submits that the nature and circumstances of the offenses warrant a sentence within the advisory Guidelines range.

2. <u>The Defendant's History and Characteristics</u>

The defendant's history and characteristics support the imposition of a sentence within the Guidelines range. 18 U.S.C. § 3553(a)(1). Although the defendant is in Criminal History Category I, he has participated in other acts of fraud, namely, the scheme to defraud Western Union, in connection with associates of organized crime.

The defendant's claim that he has no association with organized crime is disingenuous at best. (Def't PSR Obj. at 9). In fact, Rossano has long been criminally associated with CC, a high-ranking member of the Colombo family. Besides his commission of two crimes with the CC and others, CC, using his position as a Colombo family captain, assisted Rossano in obtaining employment with Local 6A, a division of the Cement and Concrete Workers of New York City Laborers' Union, extended

loanshark loans to Rossano and accompanied Rossano to gambling establishments in Connecticut on multiple occasions.

Finally, the defendant claims that he "cooperated with the law enforcement officers, and was truthful and forthcoming to all questions posed by Federal Agents . . . and the Government." (Sent. Mem. at 4). In fact, in Fall 2011, agents of the Federal Bureau of Investigation ("FBI") approached Rossano and asked Rossano whether he was involved in the scheme to defraud MoneyGram. Rossano claimed to have no knowledge of the wide-ranging scheme and advised that he was not involved in organized crime. He further declined the agents' invitation to cooperate with law enforcement.

### 3. Other Sentencing Factors

A sentence within the advisory Guidelines range is appropriate to reflect the seriousness of the offense, promote respect for the law and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the defendant's offense is a serious crime that is critical to the success of organized crime families. In addition, by engaging in this crime under the auspices of the Colombo family and making false statements to law enforcement upon questioning in Fall 2011, the defendant has demonstrated that he has little respect for the law.

A sentence within the advisory Guidelines range is also appropriate to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). Notably, Castellano and Senatore's arrest, conviction and sentence to incarceratory terms for their roles in the Western Union fraud scheme, a scheme they committed with Rossano, did not deter Rossano from participating in the charged scheme to defraud MoneyGram. Nor did CC's arrest in June 2008 for racketeering conspiracy in connection with CC's membership in and leadership of the Colombo family deter Rossano from participating in the charged crime. Therefore, a sentence within the Guidelines range is warranted to satisfy the purposes of specific deterrence and protecting the public from the defendant's crimes. The need for specific deterrence is further bolstered by the fact that the defendant's arrest in Connecticut also did not cause the defendant to formally withdraw from the conspiracy, i.e., affirmatively act to disavow the goals of the conspiracy. In addition, a sentence within the advisory Guidelines range is necessary in order to

deter others who, like the defendant, are in a position to choose between obeying the law and committing crimes.

III. Conclusion

For all of the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 21 to 27 months.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:      /s/
Elizabeth A. Geddes
Allon Lifshitz
Assistant U.S. Attorneys
(718) 254-6430/6164

cc: Clerk of the Court (KAM) (by ECF)
    Joseph Lobosco, Esq. (by ECF)
    Gina Tennen, Esq. (by ECF)
    Michelle Espinoza, Senior U.S. Probation Officer (by email)